**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raul Acosta MENDOZA, Defendant-
Appellant.**

**No. 72-3539.**

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1973.

Pat E. Dwyer, El Paso, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Ronald F. Ederer, Asst. U. S. Atty., Edward S. Marquez, El Paso, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

We hold that there was insufficient evidence to sustain the conviction of defendant under 18 U.S.C.A. § 922(a)(6) for knowingly and unlawfully misrepresenting his residence to a federally licensed firearms dealer in connection with his acquisition of a firearm.

The indictment alleged that Mendoza "did knowingly and unlawfully exhibit a false and fictitious State of Texas Chauffeur's License which stated, among other things, that he was a resident of El Paso, Texas, when in truth and fact he was a resident of Juarez, Chihuahua, Mexico, and this false and fictitious identification was likely to deceive" the licensed dealer with respect to the lawfulness of the sale.

There was no evidence from which the jury could reasonably conclude that Mendoza presented the driver's license as a representation of his residence at the time of the sale. The address on the license was a mailing address used by Mendoza. He was temporarily living at the address when the license was issued. He could be contacted by mail or telephone through the friend who was living at the address.

Mendoza, a truck driver, was admitted into the United States on June 8, 1970, as a resident alien. As a "long haul" truck driver, Mendoza spent most of his time traveling. Upon his return from a trip, he would visit friends in El Paso, remain at the El Paso Truck Terminal, check into a motel, or visit his mother in Juarez, Mexico. He maintained no permanent living accommodations.

A careful review of the testimony of the licensed dealer fails to establish the critical fact which the Government needed to prove, *i. e.* that the license was presented by defendant to the dealer for the purpose of representing his residence as opposed to merely furnishing identification. After the witness identified the sales slip concerning the transaction, she testified as follows:

Q Did you, yourself, sell this weapon to Mr. Mendoza?

A Yes, I did.

Q Are your initials on that? How can you identify that it was your sale?

A By the writing.

Q Okay. Now, do you remember selling a weapon to Raul Acosta Mendoza?

A I remember the name. I don't remember the person himself, but I remember the name becasue we have to fill out a form, that they have to answer all of these questions and sign them, and so do I have to sign it too.

Q Is this the form, Mrs. Presburg?

A Yes, that's it.

Q And this is the form that Mr. Mendoza did fill out in your presence?

A Yes, sir.

Q Could you please state the address that's shown on that form.

A 917½ South Park Street, El Paso, Texas 79901.

Q Is there a signature on this form?

A Yes. Raul Mendoza.

Q Was there any identification presented to you concerning the purchase of this weapon?

A Yes. He was identified to me by the Texas Drivers License 663 7053.

Q Now, Mrs. Presburg, would you look at the, on that form that is signed by Mr. Mendoza, the certification, could you please read that certification to the jury.

A You mean the questions?

Q Not the questions so much as the certification just below the questions.

A I hereby certify that the answers to the above are true and correct. I understand that a person who answers any of the above questions in the affirmative is prohibited by Federal law from purchasing and/or possessing a firearm. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.

Q As the standard procedure when you sell a weapon, are there any questions that you ask?

A Yes, there are eight questions that they have to answer on this form. And I also ask them if they are Texas residents. They are not allowed to buy a firearm for resale purposes, as a gift or for transfer to anyone else unless they are also a resident of the State of Texas.

Q Is this your standard procedure?

A Yes. We have a form on the wall written in English and Spanish. They are bilaws stating to that effect.

Q I'm sorry. On the wall—would you repeat that.

A We have on the wall a written card of the bilaws stating to that effect that they cannot transfer, give or sell to another person unless they are also a resident of the State of Texas.

Q Does this form also set out that they must be a resident to buy the weapon?

A Yes.

Q Did you then in fact sell to Mr. Mendoza the weapon?

A Yes.

Q And what was the amount of purchase?

A $105 plus the tax of $5.25, making a total of $110.25.

The witness could not remember this transaction. She testified that the license was presented to her as identification. She did not testify that it was given as proof of residence. The witness

did not testify that she followed her standard procedure for this sale. There was no evidence that the license was produced in response to any request she may have made concerning his residence. There was no evidence that the defendant knew that the license was being used for the purpose of determining his residence.

Without these critical facts, the proof fails to support the conviction under this indictment as written.

Reversed.